## The Kanawha.[1]

*(District Court, E. D. New York. February 17, 1886.)*

COLLISION—STEAMER AND SCHOONER—CHANGE OF COURSE—EVIDENCE.

    As the schooner M. M. was approaching New York harbor on the night of July 18, 1884, she was run into and sunk, near the Scotland light-ship by the steamer K., which had lately left New York. The schooner's witnesses testified that from the time the steamer's lights were sighted the schooner's course was never altered until the collision, and that her red light was continually exhibited to the approaching steamer. The evidence for the K. showed that the green light of the schooner was first seen a little on the steamer's port bow, whereupon the latter ported; that when the schooner's light had come to bear over the starboard bow of the steamer the schooner ported, and that this change of helm brought her under the bows of the K. *Held*, on the evidence, that the steamer's account was the true one; that the change of course on the part of the schooner caused the collision, for which she was alone responsible.

In Admiralty.

This was the case of a collision between the schooner Mary Matheson, which was bound on a voyage from the Potomac river to New Haven, Connecticut, and the steam-ship Kanawha, bound from New York to Newport News. The collision occurred near the Scotland light-ship. The steam-ship struck the schooner on her port quarter, sinking her almost immediately, and causing a loss of about $13,000, to recover which this action was brought against the steam-ship by Higgins and others, owners of the schooner. The schooner was mak-

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

ing for the Swash channel, with the wind light from the W. S. W.,
on a course, according to her story, about N. N. W.

*John C. Dodge & Sons* and *Butler, Stillman & Hubbard,* for libel-
ants.

*Charles H. Tweed* and *Robert D. Benedict,* for the Kanawha.

BENEDICT, J. The question to be determined in this case is a
question of fact, namely, whether, as the colliding vessels approached
each other, the schooner held her course, as she says she did, or
altered her course by giving way, as the steamer says she did.
There is no serious dispute as to the movements of the steamer.
What she did was right, if, as she says, the schooner, when first seen,
showed her green light, and thereafter gave way so as to show her
red light, thus bringing her under the bows of the steamer. What
the steamer did was wrong, if, as the schooner says, the red light of
the schooner was always displayed to the steamer as she approached.
A careful examination of all the testimony bearing upon this point
has forced upon my mind the conclusion that the account given by
the steamer is the true one, and that, in this instance, there was a
change of course on the part of the schooner which caused the col-
lision.

Some of the considerations leading to this conclusion may be
stated. It is proved that the schooner, when struck, was upon a
course more to the northward than the true course for the locality.
This circumstance—as to which there can be no doubt, in view of
the locality—is, to my mind, strongly suggestive of a change of
course by the schooner shortly before the collision. It is true that
the mate, who had charge of the schooner's wheel, says that the
schooner, from and before the time of seeing the steamer, was upon
the course upon which she was sailing when struck, and it would be
possible for her to sail upon such a course, although making for the
Swash channel; but such a course would not be her true course, but
an improbable course, under the circumstances. The reasons as-
signed by the mate for sailing upon such a course when bound for
the Swash channel are not satisfactory. Moreover, the account given
by the witnesses from the schooner renders such a change of course
on the part of the schooner as is charged by the steamer highly
probable, for these witnesses say that when the approaching lights
were seen by them no mast-head light was seen, and for this reason
the lights were taken to be the lights of a sailing vessel. Such a sup-
position on board the schooner would naturally lead to just the change
which the persons on board the steamer say the schooner made; the
schooner, sailing free, meeting, as she supposed, a sailing-vessel,
close-hauled, would naturally port. There is also a suggestive answer
given by the schooner's lookout, (Hopkins,) when he speaks of the
steamer's luffing across the schooner's bows. It is true that at the
time of which the witness is speaking it would not be possible for the

steamer to cross the schooner's bows by luffing, the wind being as all agree; but what I notice is that the witness, when he made this answer, evidently had in his recollection, as existing at some time, a situation of the vessels when the steamer, by luffing, would cross the schooner's bows. Such a situation, while in accord with the testimony from the steamer, could never have existed if the mate's account of the schooner's course be true. It seems to me, by this answer of the libelants' witness, the truth of the case is disclosed to be that the schooner, when seen, was showing her green light, in which case the steamer would cross her bows by luffing; and that the schooner, supposing that she was meeting a sailing vessel, close-hauled, bore away, as the witnesses from the steamer say she did.

Again, it is agreed that the steamer, on seeing the schooner's light, starboarded her helm, and bore away. Such a movement is exceedingly improbable, unless, as is proved by the witnesses from the steamer, the light of the schooner, when seen, was taken to be a green light. The libelants' witness Barnes, who was the steamer's lookout, also proves that the schooner's light was seen and reported by him in time to avoid collision. It seems more improbable that several persons on the steamer, who saw and acted upon a light before them, should have mistaken a red light for a green light, than that the schooner should have borne away on approaching a light which she says she supposed to be the light of a sailing vessel, and of a sailing vessel, of course, close-hauled; and in a case like this probabilities must determine, for it is not possible to reconcile the testimony given by those upon the respective vessels.

In this connection, I may say that I place no confidence whatever in the statement of Barnes that the light he saw on the schooner was red, in the view of the testimony of several witnesses that he reported the light as green, and the further proof that he demanded $25 from the steamer when asked to give his testimony; that he has interested himself to procure another to agree with him in his story; and that his manner upon the stand was far from assuring. Indeed, the course pursued by this witness, and the testimony he gives, tend to create, in my mind, the belief that he knows that the course of the schooner when seen was such as to display her green light to the steamer, and that the steamer properly starboarded on seeing the light in order to go under the schooner's stern. At any rate, it is plain that for $25 he would have said that such was the fact.

These are some of the considerations which have led me to adopt the statement of the steamer's witnesses as the true statement of the facts of this case. In reaching this conclusion I have overlooked no one of the positions so earnestly and so ably contended for on behalf of the schooner; but, looking at the whole case, my opinion is that the weight of the argument is with the steamer.

The libel must therefore be dismissed, and with costs.